

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00517-CV

Michael J. **GILL**, Temporary Trustee of the Francz Hamilton Foss Testamentary Trust,
Appellant

v.

Jutta **BAUMGARTEN**, Individually and as Surviving Heir of the Estate of
James C. Challiss, III, Deceased,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2025CVK000491D4
Honorable David E. Garcia, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
              Lori Massey Brissette, Justice
              H. Todd McCray, Justice

Delivered and Filed: July 15, 2026

AFFIRMED

This is an interlocutory appeal from an order denying a special appearance of an out-of-state defendant, Michael Gill. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7). After reviewing the parties' briefs and the trial court record, and after considering oral argument, we affirm the trial court's order.

## BACKGROUND

In 1921, Francz Hamilton Foss bought the mineral interests of thousands of acres of property in Webb County. Foss died in 1959, and her will created a trust. In 1961, a California probate court approved distribution in accordance with the will, directing that trust income be distributed to fifteen beneficiaries in different percentages, with each beneficiary's share to increase proportionally on the death of any other. The beneficiaries included James Challiss, appellee Jutta Baumgarten's now-deceased husband. Appellant Michael Gill was one of two trustees. In 1987, Gill and his co-trustee moved to terminate the Foss trust because its mineral interests were not productive. With the consent of all beneficiaries, in 1988 the California probate court terminated the Foss trust and ordered distribution of the trust assets to the beneficiaries.[1] According to Baumgarten, this distribution created a cotenancy to the mineral interests among the nine surviving beneficiaries, including Challiss. Baumgarten asserts that upon termination of the trust, Challiss transformed from a mere income beneficiary to a partial owner of the Webb County mineral interests.

In 2011, over two decades after the California court terminated the Foss trust, Laredo Energy IV LP determined hydrocarbons could be produced from some of the Foss mineral interests in part of Tract 16. Laredo Energy then, evidently unable to contact any of the relevant parties, used Section 64.091 of the Texas Civil Practice & Remedies Code to establish a receivership lease so that it could harvest hydrocarbons from the land and then deposit royalties into a receivership account with the Webb County clerk.[2] About three years later, in 2014, Challiss passed away, and

---

[1] The California court's 1988 order terminating the trust states the trustees "shall distribute the accumulated income *and principal* of the trust then remaining to the beneficiaries of the trust." (emphasis added).

[2] Texas law provides a mechanism for appointing a receiver when mineral interest owners cannot be located. A district court can "appoint a receiver for the mineral interest or leasehold interest under a mineral lease owned by a nonresident or absent defendant" in actions "brought by a person claiming or owning an undivided leasehold interest under a mineral lease of land in this state and that has one or more defendants who have, claim, or own an undivided mineral

his surviving spouse, Baumgarten, became heir to his estate. Baumgarten asserts she inherited Challiss's partial ownership of the Webb County mineral interests.

Gill did not learn of the lease or the account holding the royalties until 2022, when California Inheritance Group notified him that California's Unclaimed Property Division was holding over $500,000 in royalties payable to the Foss trust, specifically monies paid by Laredo Energy pursuant to the lease created via the receiver. Gill then filed a petition in Los Angeles County Superior Court requesting that he be appointed temporary trustee to marshal the royalties. The court granted Gill's petition and he became the temporary trustee in fall of 2022. Gill then filed an accounting and a petition to be appointed permanent trustee in part "so that he can continue to marshall [sic] these assets, and engage in legal proceedings in Texas to establish division orders for distribution to the beneficiaries of the Trust." Gill's petition asserted that though the trust that had been "dormant" until 2011, the royalties belong to the revived trust. Baumgarten objected to both the accounting and to Gill's appointment as trustee.

The trust litigation in California is ongoing, with the parties disputing whether the trust can be revived to resume ownership of the mineral interests and gain access and dominion over the royalties received to date and to be received in the future. Gill has asserted in the California court that the 1988 termination order did not extinguish the rights of the trustees and beneficiaries with regard to these mineral interests. Gill has further asserted that Baumgarten may only be entitled to a percentage of the royalties from the beginning of the 2011 lease until Challiss's death in 2014, at which time—assuming the trust is still in place—Challiss's royalty interest would have passed

---

interest in the same property." TEX. CIV. PRAC. & REM. CODE § 64.091. To obtain appointment of a receiver under this section, a plaintiff energy company must prove that (1) it "has made a diligent but unsuccessful effort to locate the defendant" and (2) it "will suffer substantial damage or injury unless the receiver is appointed." *Clay Expl., Inc. v. Santa Rosa Operating, LLC*, 442 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting TEX. CIV. PRAC. & REM. CODE § 64.091).

pro rata to the remaining beneficiaries, increasing their interests and leaving nothing to be inherited by Baumgarten. In contrast, Baumgarten asserts that because the trust was terminated in 1988 and its assets were distributed to Challiss and the other beneficiaries, upon Challiss's death in 2014 she became and remains a part owner of the mineral interests.

To address the issue of ownership of the Texas mineral interests, Baumgarten sued Gill and five other defendants in Webb County. In her live pleading, Baumgarten asserts the following claims against Gill: (1) trespass to try title; (2) accounting; and (3) breach of fiduciary duty. Gill responded by filing a special appearance which the trial court denied. Gill timely appealed the jurisdictional issue.

## PERSONAL JURISDICTION

On appeal, Gill argues the trial court erred in denying his special appearance because the trial court does not have specific personal jurisdiction over him. Specifically, Gill asserts Baumgarten's claims are based on conduct which occurred in California and that by such conduct he did not purposefully avail himself of the privilege of conducting any activities in Texas. In contrast, Baumgarten asserts Gill subjected himself to jurisdiction in Texas by attempting to "hijack[]" and modify ownership of royalties generated in Texas.[3]

---

[3] In her brief, Baumgarten also argues that because she asserted in the trial court that Gill waived his special appearance by seeking attorney's fees, and the trial court's order did not specify the grounds for its ruling on Gill's special appearance, Gill was required to challenge this waiver argument on appeal. *See Trevino v. City of San Antonio*, 685 S.W.3d 863, 867 (Tex. App.—San Antonio 2023, no pet.). Because he failed to brief that issue, she asserts we must affirm. But in the trial court, Baumgarten made her waiver argument only in her written response to Gill's special appearance and did not raise it as a ground at the hearing. Indeed, the hearing record indicates that when the trial court orally denied Gill's special appearance, it ruled on the merits of personal jurisdiction and did not base its ruling on waiver. Therefore, Gill's failure to address Baumgarten's waiver argument in his initial brief does not preclude us from reaching the merits of personal jurisdiction. *See Horowitz v. Berger*, 377 S.W.3d 115, 124 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Although the plaintiffs argued in the trial court that there were several reasons to deny Horowitz's special appearance, . . . the trial court expressly found that Horowitz had sufficient contacts to support its exercise of specific jurisdiction" and thus "impliedly rejected the plaintiffs' alternative theories—including the argument that Horowitz waived her special appearance."). Because we conclude the trial court did not deny Gill's special appearance based upon waiver, we need not address this waiver argument. *See* TEX. R. APP. P. 47.1.

**A. Standard of Review and Applicable Law**

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law, which we review under a de novo standard. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "When, as here, the trial court does not issue findings of fact and conclusions of law [with its special appearance ruling], we imply all relevant facts necessary to support the judgment that are supported by the evidence." *M & F Worldwide Corp.*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2012)).

"Texas courts may exercise personal jurisdiction over a nonresident defendant when (1) our long-arm statute authorizes it and (2) doing so comports with federal and state constitutional due process guarantees." *Goldstein v. Sabatino*, 690 S.W.3d 287, 294 (Tex. 2024). "[B]ecause Texas's long-arm statute extends personal jurisdiction as far as the federal constitutional requirements allow, the 'federal due process requirements shape the contours of Texas courts' jurisdictional reach.'" *Id.* (quoting *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016)). A state's exercise of personal jurisdiction comports with federal due process if (1) the nonresident defendant has "minimum contacts" with the state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017).

In Texas, we determine specific jurisdiction using a two-prong test inquiring as to whether "(1) the defendant has 'made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities [in the state],' and (2) the defendant's potential liability arose from or is related to those contacts." *In re Christianson Air Conditioning & Plumbing, LLC*, 639

S.W.3d 671, 679 (Tex. 2022) (*quoting Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007)) (alterations in original). For purposeful availment, we look solely to the actions and reasonable expectations of the defendant, requiring a plaintiff to prove that a nonresident defendant's contacts are "purposeful rather than random, fortuitous, or attenuated" and, by those contacts, the defendant "seeks a benefit, advantage, or profit from the forum state." *Id.*; *see Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005).

The plaintiff has the initial burden to plead sufficient allegations to bring a nonresident defendant within the reach of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Once the plaintiff sufficiently pleads these jurisdictional allegations, the burden then shifts to the defendant to negate all the alleged bases of personal jurisdiction. *Id.* The defendant can either present evidence to disprove the plaintiff's factual allegations or assert that, even if true, the plaintiff's allegations are insufficient to establish jurisdiction. *Id.* at 659.

### B. Application

As a preliminary matter, Gill does not argue on appeal that the trial court's exercise of jurisdiction over him fails to comport with traditional notions of fair play and substantial justice. Therefore, Gill has waived this issue. *See LG Chem Am., Inc. v. Morgan*, 663 S.W.3d 217, 239 (Tex. App.—Houston [1st Dist.] 2020), aff'd, 670 S.W.3d 341 (Tex. 2023) (affirming denial of special appearances and concluding appellants waived argument that asserting jurisdiction over them would offend traditional notions of fair play and substantial justice). Thus, we need only determine whether the record establishes that (1) by his minimum contacts, Gill purposefully availed himself of the privilege of conducting activities in the state, and (2) Gill's potential liability arose from or is related to those contacts. *See Christianson*, 639 S.W.3d at 679.

### 1. Purposeful Availment

Gill asserts he did not have contacts with Texas but rather acted in California regarding a California trust. Gill correctly notes that a party's passive status as trustee to a trust with Texas assets does not by itself establish personal jurisdiction over that party. *See JPMorgan Chase Bank, N.A. v. Campbell*, No. 09-20-00161-CV, 2021 WL 2583573, at *7 (Tex. App.—Beaumont June 24, 2021, no pet.). But, Baumgarten counters that Gill did not merely passively oversee an existing trust with Texas assets. According to Baumgarten, Gill took affirmative steps to attempt to revive the trust's ownership over the mineral interests, a position that could potentially divest her of a mineral interest she believes she owns, and to exert possession and dominion over the past and future royalties earned as a result of the Webb County mineral lease.

We agree with Baumgarten. It does not matter that Gill was physically in California when he took these actions. His actions directly impact a disputed ownership interest in the Webb County mineral lease and the royalties earned therefrom. Indeed, by seeking and obtaining appointment as trustee, Gill sought and acquired "bare legal title and the right to possession" of the Texas royalties. *Faulkner v. Bost*, 137 S.W.3d 254, 260 (Tex. App.—Tyler 2004, no pet.). By asserting ownership and control of the Texas royalties on behalf of the trust, Gill necessarily also asserted ownership and control on behalf of the trust of the underlying mineral interests which produced those royalties, a position that potentially divests Baumgarten of a property interest in the minerals. Gill, further, notified the California court that he intends to marshal future royalties resulting from the mineral lease on behalf of the trust and to engage in legal proceedings in Texas "to establish division orders for distribution to the beneficiaries of the Trust." Thus, there is no question that Gill asserted ownership and control of Texas real property on behalf of the trust. *See In re Estate of Ethridge*, 594 S.W.3d 611, 616 (Tex. App.—Eastland 2019, no pet.) (stating mineral interests

are interests in real property); *Chambers v. San Augustine Cnty. Appraisal Dist.*, 514 S.W.3d 420, 424 (Tex. App.—Tyler 2017, no pet.) ("The lessor's royalty interest under a lease providing that lessor will have a fractional portion of the minerals produced is considered an interest in real property . . . ."). By doing so, Gill "reached out and created a continuing relationship in Texas," subjecting him to specific personal jurisdiction in Texas court for claims that arise from or are related to those contacts. *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009); *see id.* at 341 ("Texas has an interest in resolving controversies involving real property within its borders[.]").[4]

We conclude Baumgarten sufficiently pled her jurisdictional allegations for purposeful availment, and Gill did not meet his burden to negate this basis for personal jurisdiction. *See Kelly*, 301 S.W.3d at 658 (Tex. 2010).

### 2. Gill's Potential Liability Arose From or is Related to his Contacts with Texas

To determine whether the trial court properly exercised specific personal jurisdiction over Gill, we next consider the second prong: whether Gill's potential liability arose from or is related to his contacts with Texas. *See Christianson*, 639 S.W.3d at 679. Baumgarten brings three claims against Gill: (1) trespass to try title; (2) accounting; and (3) breach of fiduciary duty.

In her trespass to try title claim, Baumgarten alleges that through his filings in the California trust action, Gill "created clouds on title to the mineral producing properties in Webb County." This claim plainly arises from and relates to Gill's contacts with Texas, specifically his

---

[4] In addition, Gill's statement in his petition for appointment as permanent trustee that he intended to "engage in legal proceedings in Texas to establish division orders for distribution to the beneficiaries of the Trust" demonstrates that Gill reasonably anticipated being haled into a Texas court, further demonstrating purposeful availment. *Old Republic Nat'l Title Ins. Co. v. Goldsmith*, 548 S.W.3d 1, 10 (Tex. App.—Fort Worth 2016), aff'd sub nom. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550 (Tex. 2018) ("The contacts must be such that the defendant 'should reasonably anticipate being haled into court' in Texas.") (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 311 (1980)). And his request for trustee fees from the California court, fees which would be paid from the Texas royalties, further demonstrates that through his Texas contacts he "seeks a benefit, advantage, or profit" from Texas. *Christianson*, 639 S.W.3d at 679.

assertion of a right to exercise dominion and control over Texas mineral interests and the royalties that result therefrom.[5] *See id.*

Likewise, Baumgarten's accounting and breach of fiduciary duty claims arise from or relate to Gill's contacts with Texas. Baumgarten alleges Gill breached his fiduciary duty in numerous ways, including by "failing to distribute the mineral assets by deed as required by the 1988 order terminating the Trust," "using funds that did not belong to him," and "continuing to exercise dominion and control over assets that did not belong to the Trust." She asserts Gill owed fiduciary duties to the trust beneficiaries because he applied for and took the position of temporary trustee. These allegations all arise from or relate to Gill's contacts with Texas, since Gill in his trust action asserts ownership and control of Texas property. And in her accounting claim, Baumgarten alleges Gill used funds that he had no legal right to use, asserting Gill should be required to account for these funds. Because Baumgarten's claim concerns the Texas royalty funds over which Gill asserted ownership and control on behalf of the trust, a position he could not take absent an assertion that the trust owns the mineral interests claimed by Baumgarten, this claim also arises from or relates to Gill's contacts with Texas.

For all three claims, we conclude Baumgarten sufficiently alleged that Gill's potential liability arose from or is related to his contacts with Texas, and Gill did not meet his burden to negate these bases for personal jurisdiction. *See Christianson*, 639 S.W.3d at 679; *Kelly*, 301 S.W.3d at 658 (Tex. 2010).

---

[5] Gill argues that Baumgarten failed to plead a viable claim for trespass to try title. But the viability of Baumgarten's claim is a separate issue from personal jurisdiction, the only issue in this interlocutory appeal. *See AB Land Co. v. Sanders*, 695 S.W.3d 820, 827 n.3 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (explaining requirements for a viable trespass to try title claim are separate from jurisdictional question of standing).

## CONCLUSION

Based on the foregoing, we affirm the trial court's order denying Gill's special appearance.

Lori Massey Brissette, Justice